

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  |  |  |
|---|---|---|
| RAUL SANCHEZ VALENCIA, | § | No. 08-17-00050-CR |
| Appellant, | § | Appeal from |
| v. | § | County Court at Law No. 4 |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC # 20150C05658) |
|  | § |  |

**O P I N I O N**

A jury convicted Appellant Raul Sanchez Valencia of assault causing bodily injury to a family member. Appellant's sole complaint on appeal is that the evidence is insufficient to support the conviction. We disagree and affirm.

**BACKGROUND**

On the evening of June 15, 2015, El Paso 911 operators received two calls regarding an assault. In the two calls, Jasmin Valencia told the 911 operators that Appellant had assaulted Raul Valencia, Sr. (father to both Appellant and Jasmin), and that he was bleeding and in need of paramedics. When the police arrived, Appellant was acting irrationally to the point that he was

tasered. Thereafter, the State presented an information charging Appellant with assault causing bodily injury (a Class A misdemeanor).[1]

At trial, both 911 calls were played to the jury. The responding police officers also testified. However, Jasmin Valencia, the originator of the 911 call, recanted what she told the 911 operator. Instead, she claimed to have no first-hand knowledge of the incident and stated that she only assumed there had been an assault. Raul Valencia, Sr., the victim, also denied that there was any assault, but instead claimed that he cut himself by accident after tripping. Nonetheless, the jury convicted Appellant, who was sentenced by the trial judge to a sixteen-month term of probation and a mostly probated fine.

On appeal, Appellant challenges the sufficiency of the evidence to sustain the conviction. On the strength of the 911 call, and the responding officer's testimony, the State claims that the verdict should stand. In some family violence situations, the State argues, the jury must decide if the recantation or non-cooperation of the victim or other family-member witnesses is legitimate, or whether it is based on a misplaced sense of familial loyalty. The State claims that the jury had sufficient evidence to determine that the recantation here was the latter.[2]

---

[1] TEX.PENAL CODE ANN. § 22.01(a)(1) and (2).

[2] Recantation is indeed a recognized phenomenon in family violence cases. *See* Tom Lininger, *Prosecuting Batterers After Crawford*, 91 Va.L.Rev. 747, 768 (2005)("Recent evidence suggests that 80 to 85 percent of battered women will recant at some point."); *Salazar v. State*, 13-15-00583-CR, 2016 WL 6124640, at *3 (Tex.App.--Corpus Christi Oct. 20, 2016, no pet.)(mem. op., not designated for publication)(quoting same statistics); Njeri Mathis Rutledge, *Turning A Blind Eye: Perjury in Domestic Violence Cases*, 39 N.M. L. Rev. 149 (2009)("False statements in domestic violence cases are a significant problem and considered an epidemic with an estimated 40 to 90 percent of domestic violence victims recanting."). As another commentator concluded:

> Non-cooperation by recantation or failure to appear at trial is an epidemic in domestic violence cases. Persons qualified to give expert testimony at trial on domestic violence, including psychologists, counselors, police detectives, directors of battered women's shelters, and victim advocates, consistently testify that, in their experience, it is commonplace for domestic violence victims to recant or minimize initial reports of abuse. The head of the Family Violence Division of the Los Angeles District Attorney's Office estimates that ninety percent of domestic violence victims recant.

## STANDARD OF REVIEW

Appellant' sole point of error contends the evidence is legally insufficient to sustain the jury's verdict on the assault charge. Evidence is legally sufficient when, viewed in the light most favorable to the verdict, *any* rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex.Crim.App. 2010)(establishing legal insufficiency under *Jackson v. Virginia* as the only standard for review of the evidence).

The jury is the sole judge of credibility and the weight attached to the testimony of each witness. *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex.Crim.App. 2014). It is the fact finder's duty "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex.Crim.App. 2007), *quoting Jackson*, 443 U.S. at 319, 99 S.Ct. 2781. The jury also may choose to believe or disbelieve that testimony. *Lancon v. State*, 253 S.W.3d 699, 707 (Tex.Crim.App. 2008); *Belton v. State*, 900 S.W.2d 886, 897 (Tex.App.--El Paso 1995, pet. ref'd). When the record supports conflicting inferences, we presume that the jury resolved the conflicts in favor of the verdict, and we defer to that determination. *Dobbs*, 434 S.W.3d at 170; *see also Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789.

Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone may be sufficient to establish guilt. *Dobbs*, 434 S.W.3d at 170; *Carrizales v. State*, 414 S.W.3d 737, 742 n.20 (Tex.Crim.App. 2013), *citing Hooper v. State*, 214 S.W.3d 9, 13 (Tex.Crim.App. 2007). Each fact need not point directly and independently to the

---

Douglas E. Beloof & Joel Shapiro, *Let the Truth Be Told: Proposed Hearsay Exceptions to Admit Domestic Violence Victims' Out of Court Statements As Substantive Evidence*, 11 Colum. J. Gender & L. 1, 3 (2002).

guilt of the appellant, so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Dobbs*, 434 S.W.3d at 170; *Hooper*, 214 S.W.3d at 13.

We remain mindful that "[t]here is no higher burden of proof in any trial, criminal or civil, and there is no higher standard of appellate review than the standard mandated by *Jackson.*" *Brooks*, 323 S.W.3d at 917 (Cochran, J., concurring). Nonetheless, if a rational fact finder could have found the defendant guilty, we will not disturb the verdict on appeal. *Fernandez v. State*, 479 S.W.3d 835, 838 (Tex.Crim.App. 2016).

We measure the evidence against the elements of the offense as defined by a hypothetically correct jury charge--one that accurately sets out the law, is authorized by the indictment, does not unnecessarily restrict the State's theories of liability, and adequately describes the offense for which the defendant was tried. *Hooper*, 214 S.W.3d at 14.

## ASSAULT

"A person commits an offense if the person . . . intentionally, knowingly, or recklessly causes bodily injury to another[.]" TEX. PENAL CODE ANN. § 22.01(a)(1). Bodily injury "means physical pain, illness, or any impairment of physical condition." TEX.PENAL CODE ANN. § 1.07(8). The Texas Court of Criminal Appeals has broadly interpreted this bodily injury definition to include "even relatively minor physical contacts so long as they constitute more than mere offensive touching." *Lane v. State*, 763 S.W.2d 785, 786 (Tex.Crim.App. 1989); *see also State v. Vigil*, No. 08-13-00273-CR, 2015 WL 2353507, at *4 (Tex.App.--El Paso May 15, 2015, pet. ref'd)(not designated for publication). The victim is not required to testify directly that they suffered pain, and instead, the jury is permitted to "draw reasonable inferences from the evidence, including an inference that the victim suffered pain as a result of [their] injuries." *Arzaga v. State*, 86 S.W.3d 767, 778 (Tex.App.--El Paso 2002, no pet.). In addition, the existence of a cut, bruise,

4

or scrape on the body is sufficient evidence of physical pain necessary to establish "bodily injury" within the meaning of the statute. *Id.*

## DISCUSSION

In his first issue, Appellant contends that the evidence fails to show an assault. He focuses on Jasmin Valencia's trial testimony that she did not witness any assault and mistakenly reported that Appellant had assaulted Raul Sr. to 911.[3] Appellant also focuses on Raul's testimony denying any assault and his claim that he struck his head by accident.[4] Appellant's second issue contends that the State failed to present any evidence of pain, which would then negate the necessary element of bodily injury. For this issue, Appellant focuses on Raul Sr.'s denial that the cut to his head caused any pain.[5]

---

[3] For instance:

> [PROSECUTOR]: So what you're telling me is if you made that call were you lying then or then are you lying now?
>
> [JASMIN]: I wasn't lying then or now. I just assumed things. I was awakened by a noise and I called and I just assumed, you know, I was panicking. I mean, what was I supposed to do?

[4] For instance:

> [DEFENSE COUNSEL]: And this cut that happened when you hit the door or fell against the door had nothing to do with anything that your son may or may not have done that evening at the house; is that correct?
>
> [RAUL SR.]: Definitely, it has nothing to do with it.
>
> [DEFENSE COUNSEL]: No hit or anything like that that Raul, your son -- do you even specifically remember whether he even hit you?
>
> [RAUL SR.]: He didn't hit me. It was an accident.

[5] For instance:

> [PROSECUTOR]: Okay. And is the gash you're talking about from where you hit yourself?
>
> [RAUL SR.]: Yes.
>
> [PROSECUTOR]: Were you in pain?
>
> [RAUL SR.]: No.

5

As powerful as that testimony might have been, the State impeached both Jasmin and Raul's denial of an assault. Jasmin was confronted with the two 911 calls, admitted without objection. In the first call, she stated "My brother is acting very weird and he already, he hit my Dad, and he is talking weird sh*t." The 911 operated asked what Appellant hit Raul with, and she responded, "He pushed him. . . ." She was asked if they needed paramedics and she said, "Yes, please go ahead and send them over" because her father was bleeding from his face.

Jasmin made a second call, some six minutes later, and told the operator, "My brother's being violent. . . . I'm afraid he's gonna' hurt the babies that are inside and my mother. . . . He already hurt my dad. . . ." She added that "He's saying crazy stuff . . . like I think he literally went crazy . . . he starts hitting stuff like crazy. . . ." She made the second 911 call while outside the house with her father, stating that she was "Right here at the corner, of uh, I'm outside the house because I am afraid, he already injured my father, and he's right here, my father's with me."

A rationale jury could have discounted her recantation for several reasons. First and foremost, how would she have learned the specific detailed information that she conveyed to 911 if not either from personally witnessing it, or by being told by her father. She said in the 911 calls that Appellant was "being violent" "hitting stuff like crazy" and "already injured my father." By the time of the second call, she was standing outside the house with her father because she was "afraid." The responding police officer testified that when he first arrived, she and her father were standing two houses down. A rationale jury could have concluded that people do not stand two houses away from their residence at 2:30 a.m. following a simple trip and fall accident.

---

[PROSECUTOR]: You're telling me that you were bleeding?

[RAUL SR.]: Yes, but it didn't hurt.

6

Second, Jasmin contradicted herself during her trial testimony. At trial, she testified to calling 911 once, and did not remember the second call, though the evidence clearly showed there was a second call. In that second 911 call, she stated Appellant was acting crazy, yet she denied he was acting that way at trial. The State further put on evidence from the police officers that Appellant tried to rush one of them, and once he was subdued, made a number of bizarre statements.[6] Jasmin claimed to have only later learned from her father "what really happened" but she testified at trial that she never bothered to inform law enforcement, the District Attorney's office, or even defense counsel that her first report was wrong. She also denied giving any written statements about the event, both when questioned by the prosecutor, and Appellant's counsel. But in fact Jasmin gave a notarized statement some two weeks after the incident where she denied having firsthand knowledge of any assault. When confronted with the statement, she then denied having any memory of the circumstances of signing it. A rationale jury could have concluded that a truthful witness would have had better recall of these matters.

Similarly, the jury could have discounted Raul Valencia's claim that the injury resulted from an accident. At trial, he testified that when the police arrived, he was standing just outside his doorway because he wanted some fresh air. Yet the responding officer testified that he was two houses away, standing with his daughter. Raul testified that he did not tell his daughter what happened before she made the 911 calls. Yet she made two calls, that were at least five minutes apart, and she was standing with him. A rationale jury could have concluded that it would be improbable for a daughter to not ask, and not be told why her father had a gash on his forehead

---

[6] Officer Christopher Sipe testified that after they subdued Appellant, he starting yelling, "Look to the stars. Look to the sky" and "Turn on the lights." "He repeated 6:00 a.m. dozen[s] of times." "Three plus three equals six. He stated a couple of times, I didn't kill my daughter."

7

before calling the 911 operator. It would be even more bizarre for her having been told nothing about the injury to then to call 911 and accuse her brother of committing an assault.

Raul Sr. also provided a circumstantial backdrop that supported the State's theory of the assault. Raul Sr. was awakened by Appellant who wanted to leave the house. Raul Sr. did not want him to leave because it was late and the "police can catch him or something." Raul Sr. conceded he was having a disagreement with his son and while both were at the front door, the "accident" occurred. The jury would have the benefit seeing his demeanor, which even on the written record reflects he was at times not responsive to the prosecutor's questions and repeatedly volunteered exculpatory statements.

The jury also heard from Luis Gonzales, the police officer who investigated the incident. He took a series of photographs that document a cut to Raul's scalp, and show his bloodied t-shirt. When he arrived, the officer first spoke to Raul and Jasmin. Raul was excited, mumbling, breathing hard, and speaking quickly. Jasmin was yelling and crying, and both appeared in shock Though the trial court sustained objections to what they said, the officer testified without objection as follows:

> [OFFICER GONZALEZ]: Well, after he explained to me what happened, I determined that there was an assault that occurred and that Mr. Valencia's father was the victim and the injury that he did have at the time was sustained because of that assault.
>
> .    .    .
>
> [PROSECUTOR]: So you determined that an assault had occurred based on the information you were given?
>
> [OFFICER GONZALEZ]: That is correct. Yes, ma'am.

Officer Gonzalez then approached the front door of the house. He heard a male and female yelling. The officer attempted to open the door, but it was pulled closed and locked. Just as the officer was about to breach the door, it suddenly opened and Appellant charged towards the officer. The

8

officer was able to move out of the way and put Appellant in a bear hug from behind. The two continued to struggle with Appellant screaming and yelling erratically. They continued to struggle until another officer arrived and Appellant was eventually subdued with a Taser gun.

We give deference to the jury in resolving conflicts in testimony, weighing the evidence, and drawing reasonable inferences from basic facts to ultimate facts. *Hooper*, 214 S.W.3d at 13; *Davila v. State*, 346 S.W.3d 587, 590 (Tex.App.--El Paso 2009, no pet.). Based on the evidence presented, a rational juror could have concluded beyond a reasonable doubt that Appellant intentionally, knowingly, or recklessly caused Raul Sr. bodily injury. The 911 call, and information apparently conveyed to the responding officer support a rationale inference of an assault on Raul Sr. Appellant's erratic and aggressive behavior towards the officer further supports that inference. Viewing the evidence in the light most favorable to the verdict, we find that a rational fact finder could have concluded that the witnesses' recantation was based on familial loyalty and that the evidence supports the verdict. *Cf. Amaro v. State*, 08-14-00052-CR, 2016 WL 3344568, at *12 (Tex.App.--El Paso June 14, 2016, no pet.)(not designated for publication) (upholding family violence assault conviction supported by video statement, photographs of injury, and officer's testimony despite recantation by victim); *Carrillo v. State*, 08-11-00076-CR, 2013 WL 1229011, at *7 (Tex.App.--El Paso Mar. 27, 2013, no pet.)(not designated for publication)(upholding family violence assault verdict based on police officer's testimony, photographs, 911 recording and prior family-violence assault conviction despite victim recanting at trial). Moreover, the photos of the wound and evidence of obvious bleeding support a rationale inference of pain. *Cf. Delgado v. State*, 08-15-00041-CR, 2018 WL 2424052, at *4 (Tex.App.-- El Paso May 30, 2018, no pet.)(not designated for publication)(evidence supported that assault caused pain when assailant struck victim with McDonald's "Happy Meal"); *Dawson v. State*, 08-

9

11-00203-CR, 2013 WL 4017433, at *5 (Tex.App.--El Paso Aug. 7, 2013, no pet.)(not designated for publication)(affirming assault verdict when ex-wife struck husband in the back with a tennis racket).

We overrule Appellant's first and second issues and affirm the conviction.[7]

January 30, 2019

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Palafox, JJ.

(Do Not Publish)

---

[7] The State asserts a conditional cross-point complaining of the exclusion of Raul Sr. and Jasmin's statements to the police officer at the scene as excited utterances. As we affirm the conviction, the conditional cross-point is denied as moot.

10